IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal No. 17-287-01 |
| | ) | |
| JALEN CAMERON MADISON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Defendant Jalen Madison ("Madison") pleaded guilty to a heroin and fentanyl conspiracy. Pursuant to the plea agreement, ¶ A(2), he agreed to "pay restitution under the Victim-Witness Protection Act, 18 U.S.C. §§ 3663, 3663A and 3664, to the victims and/or other persons or parties authorized by law in such amounts, at such times, and according to such terms as the Court shall direct." In the plea agreement, Madison accepted responsibility for distributing the drugs that caused the death of John Brooks Watkins. Madison was sentenced on February 22, 2018. At the request of the parties, the court deferred ruling on restitution pursuant to 18 U.S.C. § 3664(d)(5).

On March 19, 2018, the court held an evidentiary hearing regarding restitution. The government presented a witness and government exhibits G-1 to G-8 were admitted into evidence without objection. The parties filed post-hearing briefs and the restitution issue is now ripe for disposition.

Legal Analysis

Pursuant to 18 U.S.C. §3663(a)(1)(A), when sentencing a defendant convicted of a drug offense, the court may order "that the defendant make restitution to any victim of such

1

offense, or if the victim is deceased, to the victim's estate." The statute provides: "The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." *Id*. The statute defines the term "victim" as a "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663(a)(2). If the victim is deceased, the legal guardian of the victim's estate or another family member "may assume the victim's rights under this section." § 3663(a)(2). If the offense results in bodily injury to the victim, the court's restitution order shall "reimburse the victim for income lost by such victim as a result of such offense." 18 U.S.C. § 3663A(b)(2)(C). If the offense results in the death of an identifiable victim, the court's restitution order shall require the defendant to "pay an amount equal to the cost of necessary funeral and related services." § 3663A(b)(3).

Disputes about the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. 18 U.S.C. § 3664(e). The burden to demonstrate the amount of the victim's loss is on the government. *Id*. The court shall order restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." § 3664(f)(1)(A). The defendant's financial condition may be considered, however, in determining the method of payment. § 3664(f)(3).

There is no Third Circuit precedent directly on point and little guidance from other circuits regarding the scope of the restitution obligation in this matter. Several overarching principles can be discerned from decisions in other districts. The term "related services" should be construed to include services which are connected with the funeral itself, not services more

broadly associated with the victim's death. *United States v. Harwood*, 854 F. Supp. 2d 1035, 1061 (D.N.M. 2012). The relationship should involve a "common purpose—such as commemorating the life of the victim or addressing the spiritual salvation of the deceased—or temporally, such that the connection between the two events is obvious." *Id*. Restitution should reflect the expenses actually paid, rather than estimates or averages. *See United States v. McCloskey*, No. 3:14-CR-30001-01-02, 2015 WL 789305, at *1 (D.S.D. Feb. 24, 2015) (victim's father provided estimates and the government provided average funeral costs, but the court awarded a lower restitution amount because there was no testimony to justify a higher amount). The restitution amount should be reasonable. *See In re Paris Air Crash of Mar. 3, 1974*, 423 F. Supp. 367, 373 (C.D. Cal. 1976) (instructing the jury to determine the "reasonable sum for funeral expenses as are consistent with the station in life of the decedent"); *In re Cullen's Estate*, 8 Pa. Super. 494, 498-99 (Pa. Super. Ct. 1898) (reducing amount claimed by estate for an elaborate funeral and awarding only funeral expenses "as will bear a just, fair and reasonable proportion to the amount of the estate of the decedent and his or her station in life").

In a somewhat analogous situation, the IRS offers guidance on what funeral expenses are allowed as deductions from a decedent's estate. The deduction includes sums reasonably and actually expended for a tombstone, monument, or mausoleum, or for a burial lot, including a reasonable expenditure for its future care, and the cost of bringing the body to the place of burial. 26 C.F.R. § 20.2053-2. IRS examiners were instructed to accept any reasonable judgment made in good faith by the executor or administrator as to what was considered necessary for the estate at the time of incurring the expense. Edward Jay Beckwith and Turney P. Berry, Tax Mgmt. (BNA) Portfolio 840-3rd: Estate Tax Deductions— Sections 2053, 2054 and 2058, Detailed Analysis, B. Funeral Expenses at 4 (*citing* Examination Technique Handbook

3

for Estate Tax Examiners, IRM [4350] § 16(44) (12-16-87), *available at* https://www.bna.com/estate-tax-deductions-p7478/, (last visited April 20, 2018). Pennsylvania similarly allows itemized funeral expenses, including but not limited to opening of graves, services of mortician, embalming and transportation, casket, flowers, fee for religious service, funeral refreshments, the cost of a burial lot or other resting place, and purchase and erection of a marker, gravestone or monument on decedent's final resting place. www.revenue.pa.gov, Instructions for REV-1511 Schedule H.

Application to this case

The plea agreement confers substantial discretion to the court to determine both the recipients and amount of restitution. The claimed expenses are well-documented and were actually incurred by the family. The government forthrightly "self-audited" expenses lacking proper documentation. The court must assess the reasonableness of each expenditure. The government, on behalf of the victim's estate and family members, seeks restitution for the following items: (1) automobile gasoline used by the victim's grandmother to make funeral arrangements ($73.04); (2) flowers ($630.70); (3) funeral clothes for family members ($909.26); (4) hotel bills for family members ($1,309.84); (5) a memorial luncheon for 250 people, plus tip ($5,900.00); (6) the funeral home ($8,110.00); (7) interment ($4,340.00); (8) the victim's lost earnings ($1,200,000.00 or $393,177.60); (9) hotel bills for family members ($762.91); (10) hotel bills for family members ($448.96); and (11) hotel bills for family members ($265.98). The government affirmatively represented that expenses submitted by family members for unknown purchases at Walmart, costs associated with selling the victim's car and a second memorial luncheon were not "necessary" or "related to" the funeral and were not recoverable.

Madison stipulated to the recovery of claimed restitution amounts for flowers, the funeral home and interment, a total of $13,080.70. Madison objected to all other restitution claims. The court will individually address them.

1. Gasoline bills

The gasoline used to make funeral arrangements is reasonably related to victim's death. The victim's grandmother would not have incurred that expense but for his death. Although it may be excessive to use almost two full tanks of gas to make funeral arrangements instead of using the telephone or internet, defendant did not articulate a specific objection to this claim. The court accepts the claim that this cost was related to the funeral. The full amount of $73.04 will be awarded.

2. Clothes purchases

It is not reasonable to impose on a criminal defendant the costs of buying <u>new</u> clothes to attend a funeral. The government did not meet its burden to show that the clothes purchased by family members were directly related to the funeral, that the clothes would not be worn again, or that the purchases were "necessary" because the individuals involved had no other appropriate clothing options. This claim will be denied.

3. Memorial luncheon

In *McCloskey*, the court awarded $1,600.00 in restitution for meal expenses associated with a wake and funeral. 2015 WL 789305, at *2. Madison agrees that a memorial luncheon can be valuable in allowing the grieving family to recognize the life of their lost loved one, but objects to the "grandeur and excessive nature" of this luncheon. The luncheon was held at California University's convocation center. The victim's grandfather was the former president of California University. Madison raises two specific objections: (1) serving prime rib ($20 per

5

person), when less expensive options such as chicken ($15.50 per person) were available; and (2) hosting 250 guests at the luncheon.

The summary exhibit offered by the government at the hearing sought a discounted amount of $4,375 for the memorial luncheon. (Exh. G-1). This calculation reflects $17.50 per person (the cost of a roast beef buffet) and no tip.

Defendant's objections to the memorial meal are well taken. The court must award "necessary" and "reasonable" funeral expenses. Although a family may choose to have a more elaborate luncheon, it is not reasonable to pass all costs to the criminal defendant as restitution. The cost per person awarded for the luncheon will be $15.50, because that option was available to the family. The choice to serve prime rib instead of chicken should not be imposed on Madison. The "necessary" function of the memorial luncheon is to allow the family and close friends to grieve and share reminiscences. The need for 250 persons to attend this luncheon was not explained by the government. Assuming that all fourteen relatives for whom the government submitted restitution claims attended the luncheon, the identities and relationships of the other 236 guests at the luncheon are unknown. Given the choice of venue at California University and the grandfather's status as the former president of that institution, it is likely that many of the attendees were associated with the grandfather and university rather than the victim or family. In *Davenport v. Commissioner of Internal Revenue*, 92 T.C.M. (CCH) 324 at 15-17 (2006), the court held that an estate failed to prove the costs of a memorial luncheon were reasonable or that it was sufficiently connected to the funeral. In this case, the government did not meet its burden to show that such a large event was a necessary related service. The court will award restitution for 75 guests at $15.50 per guest, for a total of $1,162.50.

4.  Hotel bills

Madison contends that many of the family members' decisions to stay at the Best Western hotel was a choice, not a "necessary" expense. Madison reasons that family members living in the local area should have commuted from home to the funeral. Madison points out that the grandparents had a nearby home that was unoccupied during the relevant time frame, at which family members could have stayed. Madison also contends that the rate for the Best Western ($100 per night) was excessive. The government stipulated at the hearing that the rate for a nearby Red Roof Inn is $59 per night.

In *United States v. Amador-Huggins*, 799 F.3d 124, 133-34 (1st Cir. 2015), the government sought restitution for flights from the Netherlands for eight family members to attend the funeral in Puerto Rico and hotel bills for the family. The district court, without discussion, awarded half the amount claimed. Because defendant did not object, the appellate court upheld the award on "plain error review." The court noted the "absence of any guidance" on whether such travel expenses are necessary related services. *Id*. at 134. In *McCloskey*, the court concluded that "travel and motel expenses for those attending the funeral, wake and later memorial service do not qualify as necessary funeral or related service." 2015 WL 789305, at *1.

Under the circumstances of this case, the court agrees with defendant. It was not "necessary" or reasonable for local family members to stay at a hotel when they could have readily commuted. The victim's parents, for example, did not submit a claim for a hotel stay. The government did not meet its burden to show unique circumstances to justify the hotel expense. The court takes judicial notice that the driving distance to California, Pennsylvania is 55 miles from Ambridge; 48 miles from Coraopolis; and 57 miles from Marshall Township. By

way of comparison, the court requires jurors who live less than 60 miles from the courthouse to commute to and from court each day, even in the winter, rather than staying at a hotel. *See* http://www.pawd.uscourts.gov/court-info/faq/JURY?page=2. The hotel bill claims of Susan Scherfel, Mark and Susan Trella and Bill Scherfel will be denied.

Sarah and Ben Keddie (the victim's aunt and uncle) traveled from Spotsylvania, Virginia to attend the funeral. It was reasonable to stay at a hotel, even if there may have been space for them to stay at a local family member's home. The Keddies, however, submitted a restitution claim for $762.91 for staying at the Best Western for an entire week, from August 22-29, 2015. That entire time was not necessary or reasonable. The government apparently recognizes that the length of stay was excessive and seeks restitution for less than half the claim, $326.97. (Exh. G-1). The court will award restitution for two nights, the nights before and after the funeral service. The reasonable nightly rate is $59, based on the government's stipulation at the hearing. The Kettles' choice to stay at a more expensive hotel should not be passed on to the defendant. The total amount of restitution awarded for hotel stays is $118.

5. Victim's lost earning capacity

The government seeks restitution for the victim's future lost income. The court need not resolve the difficult legal issues of first impression in the Third Circuit implicated by this claim because it is clear, on this record, that the government did not meet its factual burden.

The government proposed two measures of lost earnings. First, it calculated the average salary of all college graduates for an entire working career (20 years x $60,000/year = $1,200,000). Second, it calculated career earnings based on the starting salary of a naval recruit (20 years x $19,658.88/year = $393,177.60).

Both of these calculations are entirely speculative. The government called no fact witnesses with direct knowledge of the victim's career plans and called no expert witness to calculate his earning capacity. The victim previously enrolled as a student at California University as a graphic design major but had taken at least one semester off. At the time of his death, he was not employed. There is no evidence in the record that the victim would have completed a college degree or would have earned $60,000 per year. He had taken preliminary steps to join the Navy by meeting with a recruiter and completing an exam. The record is clear, though, that the victim was a heroin addict and heroin users are not permitted to join the Navy. (ECF No. 35 at 16). There is no evidence in the record that the victim would have been able to join the Navy or work for twenty years. Restitution for future lost income cannot be based upon speculation. *United States v. Cienfuegos*, 462 F.3d 1160, 1168-69 (9th Cir. 2006). In sum, the restitution claim for lost earnings is denied.

Conclusion

The court will order Madison to make restitution in the total amount of $14,434.24, which the court finds equals the cost of necessary funeral and related services.

An appropriate order and a revised Judgment will be entered.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal No. 17-287-01 |
| | ) | |
| JALEN CAMERON MADISON, | ) | |
| | ) | |
| Defendant. | ) | |

RESTITUTION ORDER

And now, this 20th day of April, 2018, in accordance with the accompanying memorandum opinion, the court orders Defendant Jalen Cameron Madison to make restitution in the total amount of $14,434.24 to the following persons:

| | |
|---|---|
| Susan Scherfel (gasoline, flowers, memorial luncheon): | $ 1,866.24 |
| John P. and Carol Watkins (funeral) | $ 8,110.00 |
| John G. and Amy Watkins (interment) | $ 4,340.00 |
| Sarah and Ben Keddie (hotel) | $ 118.00 |

The government shall provide contact information for each recipient to the clerk of courts. The court finds that Madison does not have the ability to pay interest on restitution and therefore interest is waived.

Defendant shall make restitution payments from any wages he earns in prison in accordance with the inmate financial responsibility program of the Bureau of Prisons ("BOP"). Any portion of the restitution not paid at the time of defendant's release from imprisonment shall be paid as a condition of supervised release at a rate of not less than ten percent of his gross monthly earnings. The first payment shall be due within 30 days from defendant's release from

BOP custody.  Defendant shall apply all amounts received from income tax refunds, lottery winnings, inheritance, judgments or other financial gains of a similar nature toward the outstanding balance of restitution unless excused from doing so by an order of this court.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge